**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO: 24-12026 |
| FIRST EMANUEL BAPTIST CHURCH, | § § | CHAPTER 11 |
| DEBTOR. | § § § | SECTION A |
| FIRST EMANUEL BAPTIST CHURCH, | § § § | |
| PLAINTIFF, | § § § | |
| V. | § § | ADV. NO. 25-1022 |
| HANCOCK WHITNEY BANK AND FAIRPORT ASSET MANAGEMENT III REO, LLC, | § § § § § | |
| DEFENDANTS. | § § | |

**ORDER**

The Debtor in the above-captioned lead bankruptcy case filed a motion to sell real property located at 1933 Wooddale Boulevard, Baton Rouge, LA (the "Wooddale Property") to Hancock Whitney Bank ("Whitney") on April 10, 2025, (the "Sale Motion"). [No. 24-12026, ECF Doc. 114]. This Court *sua sponte* converted any contested matter pertaining to the Sale Motion to an adversary proceeding to determine the validity, priority, or extent of the liens on the Wooddale Property. [No. 24-12026, ECF Doc. 120].

Before the Court is the *Motion For Summary Judgment* (the "Motion"), [ECF Doc. 7], and the statement of uncontested facts in support of the Motion, [ECF Doc. 7-2], filed by Whitney. Also before the Court is *Fairport Asset Management III Reo, LLC's Motion For Summary Judgment* (the "Cross Motion"), [ECF Doc. 8], and the statement of uncontested facts in support

of the Cross Motion, [ECF Doc. 8-2], filed by Fairport Asset Management III REO, LLC ("Fairport

REO").  Whitney filed an opposition to the Cross Motion, [ECF Doc. 12], and a reply in support

of the Motion, [ECF Doc. 14].  Fairport REO filed an opposition to Whitney's Motion, [ECF Doc.

13], and a reply in support of the Cross Motion, [ECF Doc. 15].  The Debtor joins in the Motion

filed by Whitney.  [ECF Doc. 9].

Through the Motion, Whitney seeks summary judgment that Fairport REO does not have

a valid, enforceable mortgage on the Wooddale Property.  Alternatively, Whitney seeks summary

judgment that Whitney's rights in the Property are superior to Fairport REO's rights.  Through the

Cross Motion, Fairport REO seeks summary judgment (i) that it is a co-mortgagee with Whitney

to the Property, (ii) that its claims against the Debtor are secured up to its *pro rata* share under

Louisiana law, and (iii) to prohibit any sale of the Wooddale Property without adequate protection

to Fairport REO.

For the following reasons, the Court the **DENIES** the Motion and the Cross Motion.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C.

§ 1334.  The matters presently before the Court constitute core proceedings that this Court may

hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(K).  Venue is proper pursuant to

28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

The parties agree upon or do not dispute the following facts:

1.      On April 29, 2014, First Emanuel Baptist Church executed a mortgage (the

"Mortgage") in favor of First NBC Bank ("FNBC"), its successors and assigns, which was

recorded in the mortgage records of East Baton Rouge Parish on May 2, 2014.  [ECF Doc. 7-2,

¶ 1; ECF Doc. 13-1, ¶ 1].

2.	The Mortgage encumbers immovable property located at the Wooddale Property to

secure the payment and satisfaction of the "Indebtedness," which the Mortgage defines as (among

other things):

> any and all present and future loans, advances, and/or other extensions of credit
> obtained and/or to be obtained by [Debtor] from [FNBC], as well as [FNBC's]
> successors and assigns, from time to time, one or more times, now and in the future,
> under a certain commercial loan agreement dated April 29, 2014 any and all
> promissory notes evidencing such present and/or future loans, advances, and/or
> other extensions of credit, including without limitation, a Note dated April 29,
> 2014, in the principal amount of $550,000.00, from [Debtor] to [FNBC], and any
> and all amendments thereto and/or substitutions therefor, and any and all renewals,
> extensions and refinancings thereof, as well as any and all other obligations . . . that
> [Debtor] may now and/or in the future owe to and/or incur in favor of [FNBC] . . .

[ECF Doc. 8-2, ¶ 2; ECF Doc. 12-1, ¶ 2].

3.	The Mortgage also provides that it secures the prompt and punctual payment and

satisfaction of any and all present and future loans extended to the Debtor by FNBC.  [ECF Doc.

7-2, ¶ 2; ECF Doc. 13-1, ¶ 2].

4.	On September 29, 2014, FNBC and the Debtor executed a modification of the

Mortgage (the "Mortgage Modification") that specifically included in the "Indebtedness:" (1) the

April 29, 2014, promissory note referenced in the original Mortgage in the principal amount of

$550,000; (2) another promissory note dated April 29, 2014, executed by the Debtor in the

principal amount of $100,000; and (3) a promissory note dated September 29, 2014, executed by

the Debtor in the principal amount of $1,414,000 (the "September 2014 Note").  [ECF Doc. 8-2,

¶ 3; ECF Doc. 12-1, ¶ 3; ECF Doc. 7-2, ¶ 6 &7; ECF Doc. 13-1, ¶ 6 & 7]

5.      The Mortgage Modification also included in the "Indebtedness" any and all future notes executed between FNBC and the Debtor, including:

ALL OTHER OBLIGATIONS, INCLUDING, WITHOUT LIMITATION, MORTGAGOR'S COVENANTS AN AGREEMENTS IN ANY PRESENT OR FUTURE LOAN OR CREDIT AGREEMENT OR ANY OTHER AGREEMENT, DOCUMENT OR INSTRUMENT EXECUTED BY MORTGAGOR AND LIABILITIES THAT MORTGAGOR MAY NOW AND/OR IN THE FUTURE OWE TO AND/OR INCUR IN FAVOR OF MORTGAGEE WHETHER DIRECT OR INDIRECT, OR BY WAY OF ASSIGNMENT OR PURCHASE OF A PARTICIPATION INTEREST, AND WHETHER RELATED OR UNRELATED, OR WHETHER COMMITTED OR PURELY DISCRETIONARY, AND WHETHER ABSOLUTE OR CONTINGENT, LIQUIDATED OR UNLIQUIDATED, VOLUNTARY OR INVOLUNTARY, DETERMIND OR UNDETERMINED, DUE OR TO BECOME DUE, AND WHETHER NOW EXISTING OR HEREAFTER ARISING, OR OTHERWISE SECURED OR UNSECURED, WHETHER MORTGAGOR IS OBLIGATED ALONE OR WITH OTHERS ON A "SOLIDARY" OR "JOINT AND SEVERAL" BASIS, AS A PRINCIPAL OBLIGOR OR AS A SURETY, GUARANTOR, OR ENDORSER, OF EVERY NATURE AND KIND WHATSOEVER, WHETHER OR NOT ANY SUCH INDEBTEDNESS MAY BE BARRED UNDER ANY STATUTE OF LIMIATIONS OR PRESCRIPTIVE PERIOD OR MAY BE OR BECOME OTHERWISE UNENFORCEABLE OR VOIDABLE FOR ANY REASON WHATSOEVER. RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL ARE STATED IN THE MORTGAGE AND SECURITY AGREEMENT.

[ECF Doc. 8-2, ¶ 4; ECF Doc. 12-1, ¶ 4].

**6.**      On April 28, 2017, the Louisiana Office of Financial Institutions filed a motion to close and liquidate FNBC and to confirm the appointment of receiver in the matter styled *In re First NBC Bank, New Orleans, LA, a Louisiana Bank*, No. 17-4057, Civil District Court for the Parish of Orleans, State of Louisiana.  [ECF Doc. 8-2, ¶ 5; ECF Doc. 12-1, ¶ 5].

7.      Pursuant to Louisiana Revised Statutes § 6:387(A), Commissioner Ducrest, as court-appointed Conserver of FNBC, entered into an agreement with the Federal Deposit Insurance Corporation ("FDIC-R") to appoint FDIC-R to liquidate FNBC.  Pursuant to Louisiana Revised Statutes § 6:383 and 12 U.S.C. § 1821, the FDIC-R succeeded to all rights, titles, powers, and privileges of FNBC.  [ECF Doc. 7-2, ¶ 14; ECF Doc. 13-1, ¶ 14].

8.      On January 9, 2018, Whitney recorded an assignment in the mortgage records of East Baton Rouge Parish (the "Assignment").  [ECF Doc. 8-2, ¶ 12; ECF Doc. 12-1, ¶ 12].

9.      The language of the recorded Assignment reflects that FNBC assigned "certain loans" to Whitney. "Certain loans" includes the September 2014 Note. [ECF Doc. 8-2, ¶ 13; ECF Doc. 12-1, ¶ 13].

10.      FDIC-R and CL IV Loan Acquisition Solutions LLC ("CL IV") executed a document titled "Assignment of Mortgage" dated April 9, 2018, that was recorded in the mortgage records of East Baton Rouge Parish on April 23, 2018 (the "CL IV Assignment"). [ECF Doc. 8-2, ¶ 10; ECF Doc. 12-1, ¶ 10].

11.      On April 16, 2021, CL IV recorded a purported assignment of the Mortgage, executed by John M. Himmelberg ("Himmelberg") on March 29, 2021, to CL45 LAS REO LLC into the East Baton Rouge Parish Mortgage records, at Orig. 860, Bndl: 13101. [ECF Doc. 7-2, ¶ 20(g); ECF Doc. 13-1, ¶ 20(g)].

12.      On March 6, 2024, CL45 LAS REO LLC recorded a purported assignment of the Mortgage, executed by Himmelberg on February 13, 2024, to MMG Investments II, LLC into the East Baton Rouge Parish Mortgage records, at Orig: 910, Bndl: 13300. [ECF Doc. 7-2, ¶ 20(h); ECF Doc. 13-1, ¶ 20(h)].

13.      On March 6, 2024, MMG Investments II, LLC recorded a purported assignment of the Mortgage, executed by Himmelberg on January 31, 2024, to Fairport Asset Management, III, LLC ("Fairport III") into the East Baton Rouge Parish Mortgage records, at Orig: 911, Bndl: 13300. [ECF Doc. 7-2, ¶ 20(i); ECF Doc. 13-1, ¶ 20(i)].

14.      Fairport REO alleges that it is the holder and owner of (1) the $550,000.00 April 29, 2014, promissory note; (2) the $100,000.00 April 29, 2014 promissory note; (3) a promissory note executed by the Debtor in favor of FNBC dated June 25, 2015 in the principal amount of $607,216.51; and (4) a promissory note granted by Debtor in favor of First NBC dated July 1, 2015

in the principal amount of $650,000.00 (together, the "Remaining Notes"). [ECF Doc. 7-2, ¶ 8; ECF Doc. 13-1, ¶ 8].

## ANALYSIS

Whitney alleges it purchased all rights in the Mortgage Modification, including existing and future notes. Whitney asserts that because it exclusively acquired all the rights in the Mortgage Modification, FDIC-R could not assign those rights to CL IV. Fairport REO alleges it has a mortgage on the Wooddale Property by virtue of a series of assignments of the Remaining Notes and is entitled to a *pro rata* share from the proceeds of any sale of the Wooddale Property and adequate protection.

### A.     Summary Judgment Standard

A court grants summary judgment when the pleadings, discovery responses, and affidavits show no genuine dispute as to any material fact and the evidence entitles the movant to judgment at trial. FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). No genuine dispute exists when "a rational trier of fact could not find for the [nonmovant] based upon the record evidence before the court." *James by James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A court views the facts and evidence in the light most favorable to the nonmovant. *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). If the movant fails to show an absence of a genuine issue of material fact, a court shall deny the movant's motion. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant must go beyond the pleadings and designate facts that show a genuine issue. FED. R. CIV. P. 56(c)(1). In deciding a motion for summary judgment, "the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

> **B.** **Genuine Issues of Material Fact Exist Regarding Whether Fairport REO Holds a Valid, Enforceable Mortgage on the Wooddale Property and Is a Co-Mortgagee with Whitney**

In Louisiana, a "[m]ortgage is a nonpossessory right created over property to secure the performance of an obligation." LA. CIV. CODE ART. 3278 (2024). "A mortgage governs the rights in the security but ultimately is an accessory to the note secures." *In re LeBlanc*, 593 B.R. 734, 739 (Bankr. E.D. La. 2018), *aff'd and remanded*, 604 B.R. 693 (E.D. La. 2019) (citing LA. CIV. CODE ART. 3282). Thus, the transfer of a note secured by a mortgage "includes the transfer of the mortgage." LA. CIV. CODE ART. 3312 (2024). An assignee who is the holder of the note via an allonge that is affixed to and made a part of the note, is entitled to its enforcement even though it is not authentic evidence of the assignment of the note. *See* LA. REV. STAT. ANN. § 10:3-301; *Bayview Loan Servicing, LLC v. Holden*, 391 So. 3d 751 (La. App. 1 Cir. 2024). But the mere recordation of an instrument does not create a presumption the instrument is valid. *See* LA. CIV. CODE art. 3341 (2024); *Gulf S. Bank & Tr. Co. v. Demarest*, 354 So. 2d 695 (La. Ct. App. 1978).

In support of its Motion, Whitney attached the affidavit of Robert M. Stone, the Vice President of Whitney, and the purchase security agreement (the "PSA") between Whitney and FNBC for the purchase of the September 2014 Note. [ECF Doc. 7-5]. Whitney also attached the Assignment which assigns the Loan Documents, as defined in the PSA, to Whitney. [ECF Doc. 7-6]. Whitney focuses on the language in the PSA which states that FNBC "shall grant, sell, convey, assign, transfer and deliver to [Whitney] . . . all of [FNBC's] right, title and interest . . . in and to the. . . Loan Documents." [ECF Doc. 7-5]. The PSA defines Loan Documents as "all documents with respect to [the September 2014 Note] in which Seller has any right, title, and interest, including . . . mortgages . . . and all written modifications." [ECF Doc. 7-5]. Thus, Whitney argues that FNBC sold all its right, title, and interests in the Mortgage, including its

7

interest in the Remaining Notes since the Modification of Mortgage includes the Remaining Notes as part of the "indebtedness."

The parties do not dispute that the Mortgage Modification encumbers the Wooddale Property to secure repayment of all the notes. But Fairport REO disputes the validity and timing of the PSA transaction between Whitney and FNBC. [ECF Doc. 7-2, ¶¶ 9–12 & 18; ECF Doc. 13-1, ¶¶ 9–12 & 18]. Although the parties do not dispute the Assignment was recorded, [ECF Doc. 8-2, ¶ 12; ECF Doc. 12-1, ¶ 12], the recordation does not guarantee the validity of the Assignment or the PSA. Assuming the PSA and the Assignment are valid, Stone's affidavit specifically declares that the "Debtor is indebted to Whitney as evidenced by that certain [p]romissory note dated September 29, 2014." [ECF Doc. 7-3].

In support of its Motion, Fairport REO attached promissory notes with accompanying allonges showing the transfer to Fairport REO of promissory notes dated (i) April 29, 2014; (ii) June 25, 2015; and (iii) July 1, 2015. [ECF Doc. 8-3]. Fairport REO also attached the declaration of Timothy P. Sheehan (the person who oversaw the management of the loan relationship between Fairport REO and the Debtor) and the declaration of Himmelberg (the authorized agent for CL IV). [ECF Docs. 15-2 & 15-3]. Sheehan and Himmelberg state that CL IV and FDIC-R understood and intended to transfer the Remaining Notes to CL IV and the Modification of Mortgage to secure the Remaining Notes. [ECF Docs. 15-2 & 15-3]. Whitney disputes that Himmelberg possessed valid power of attorney to execute the series of assignments from CL IV to Fairport REO. [7-2, ¶ 18]. In response, Fairport REO attached the limited power of attorney for Himmelberg and Sheehan, [ECF Doc. 13-2], and the assignment of the Remaining Notes and Mortgage, [ECF Doc. 13-4].

Whitney further contends that, even if Fairport REO holds a valid, enforceable mortgage, its rights to the Wooddale Property are superior to Fairport REO's rights because Whitney recorded the Assignment on January 9, 2018, a few months prior to the assignment from FDIC-R and CL IV was recorded on April 9, 2018. A conventional mortgage, or an instrument transferring rights in the mortgage, ranks based on the time it is recorded in the mortgage records of the parish in which the immovable is located. *See* LA. CIV. CODE arts. 3307 & 3308 (2024). "[R]ecordation merely permits a party to introduce an instrument into evidence to assert its validity *against third parties*; it does not guarantee the validity of the instrument's substance." *In re LeBlanc*, 593 B.R. 734, 743 (Bankr. E.D. La. 2018) (emphasis added).

The parties do not dispute that Whitney recorded the Whitney Assignment on January 9, 2018, [ECF Doc. 8-2, ¶ 12; ECF Doc. 12-1, ¶ 12], three months before the CL IV Assignment was recorded. [ECF Doc. 7-2, ¶ 20(f); ECF Doc. 13-1, ¶ 20(f)]. But the parties dispute facts surrounding the execution of the CL IV Assignment. [ECF Doc. 7-2, ¶ 20(e), ECF Doc. 13-1, ¶ 20(e)]. Fairport REO's supporting declarations state "there was no document in the applicable public records reflecting that the [Mortgage Modification] . . . had been. . . transferred," at the time the CL IV Assignment was executed. [ECF Docs. 15-2,-3]. Whitney asserts the CL IV Assignment was executed on April 9, 2018, and bore an effective date of October 18, 2017. [ECF Doc. 7-2, ¶ 20(e)]. Fairport REO asserts the allonges transferring the Remaining Notes were executed in October 2017. [ECF Doc. 13-1, ¶ 20(e)].

Because the Court cannot weigh evidence at this stage, the Court finds that genuine issues of material fact exist the validity and ranking of lien rights held by both Whitney and Fairport REO such that summary judgment is inappropriate.

Accordingly,

**IT IS ORDERED** that the Motion and the Cross Motion are **DENIED**.

New Orleans, Louisiana, September 24, 2025.


_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE